**In re Sidney L. EISENBERG and Patricia A. Eisenberg, Debtors.**

**Bankruptcy No. 880–00875.**

United States Bankruptcy Court, E. D. New York at Westbury.

Dec. 10, 1980.

Edward Murphy, New York City, for Westside Federal Savings and Loan Association.

Morton Gottlieb, Long Beach, N. Y., for the City of Long Beach, David N. Hilgendorff and Robert C. Harrington.

ROBERT JOHN HALL, Bankruptcy Judge.

This is the Court's motion[1] to hold the City of Long Beach ("Long Beach"), David N. Hilgendorff, Corporation Counsel of the City of Long Beach and Robert C. Harrington, Treasurer of the City of Long Beach, (hereinafter collectively referred to as "Respondents") in contempt for having knowingly and willfully violated the automatic stay provisions of 11 U.S.C. section 362(a).[2] For the reasons set forth below, the Court finds Long Beach and David N. Hilgendorff in contempt and will certify the facts to the District Judge so that Long Beach and Hilgendorff may be prosecuted for criminal contempt.

II.

The facts are not in dispute. On February 22, 1980, Sidney and Patricia Eisenberg (the "debtors") filed a Chapter 13 petition under the Bankruptcy Code. Thereafter, Respondents caused to be published a legal notice of sale of tax liens on the debtors' property. Respondents also mailed a copy of this notice to counsel for the first mortgagee, Westside Federal Savings and Loan Association of New York City ("Westside Federal"). The scheduled date for the sale of the tax liens was June 2, 1980.

On or about May 2, 1980, counsel for Westside Federal sent the following letter to Mr. Robert L. Harrington, Treasurer of the City of Long Beach:

Edward F. Murphy

Attorney at Law

1790 Broadway

New York, New York 10019

May 2, 1980

Mr. Robert L. Harrington, Treasurer
The City of Long Beach
City Hall
Long Beach, New York 11561

Re: Block 115, Lot 172 on the TAX MAP OF THE CITY OF NEW YORK. 1979/1980 2nd HALF CITY TAX. *AMOUNT OF LIEN–$757.70* OWNERS: SIDNEY L. EISENBERG AND PATRICIA EISENBERG, his wife RESIDING AT THE TAX LOT PREMISES 118 EAST PENN STREET *LONG BEACH, NEW YORK 11561* MORTGAGEE: WESTSIDE FEDERAL SAVINGS AND LOAN ASSOCIATION OF NEW YORK CITY *MORTGAGE NO. 412,536.*

Dear Mr. Harrington:

I am counsel to the above Association. This is in reference to your published legal notice of sale of Tax Liens scheduled for sale on June 2, 1980, a copy of which you mailed to the Association on April 30, 1980. The notice includes the above tax item.

---

1. *See* Fed.R.Bankr.P. 920(a)(2); 2A *Collier on Bankruptcy*, ' 41.10, 1600 (14th ed. 1972).

2. The motion also sought to hold Allied Capital Corporation, a secured creditor of the debtor, and its attorney in contempt for knowingly and willfully violating the automatic stay provisions of 11 U.S.C. § 362(a). Allied had commenced a foreclosure action in the State Court after the debtors had filed their Chapter 13 petition. This part of the motion was dismissed after Allied and its counsel satisfied the Court that neither party had actual knowledge that the debtors had filed their Chapter 13 petition.

*This is to advise you that the above Mr. & Mrs. Eisenberg filed a petition in bankruptcy on February 22nd, 1980 in the U.S. DISTRICT COURT, EASTERN DISTRICT of NEW YORK (Westbury division) under File No. 88000875. The Association is automatically stayed from foreclosing or paying any real estate taxes and you and the City of Long Beach, as well as the other taxing authorities, are stayed from proceeding to compel payment or enforce tax liens. Accordingly you must forthwith withdraw the above tax lien from the sale. The fact that neither the Association or (sic) you have received written notice as to the bankruptcy petition is immaterial.*

I will appreciate your prompt advice in the matter since the first hearing on the debtors' plan is scheduled for May 7th, 1980.

Very truly yours,
Edward F. Murphy

[Exhibit 1] (Emphasis added).

Respondents, by their then Corporation Counsel, responded to the May 2nd, 1980 letter with a letter of their own, dated May 22, 1980:

City of Long Beach
Office of the Corporation Counsel
Kennedy Plaza
Long Beach, New York 11561
(516) 431–1000
May 22, 1980

Edward F. Murphy, Esq.
1790 Broadway
New York, N.Y. 10019

Re: Block 115, Lot 172
1979/80 2nd Half City Tax
*Amount of Lien: $757.70*
Owners: Sidney L. Eisenberg and Patricia Eisenberg, his wife
Residing at Tax Lot Premises
118 East Penn Street
*Long Beach, New York 11561*
Mortgagee: West Federal Savings and Loan Assoc. of New York City
*Mortgage No.: 412536*

Dear Mr. Murphy:

Your letter of May 2, 1980 addressed to the City Treasurer concerning the above captioned matter has been referred to me for attention.

I regret to inform you that the Treasurer of the City of Long Beach is mandated by the City Charter to sell the tax lien on the captioned premises on June 2, 1980, and does not have any discretionary power to withdraw that tax lien from said sale. *The treasurer has not been stayed by an order of any court of competent jurisdiction, nor has he received any official notice of the pendency of any proceeding which would automatically stay the municipality from selling the tax lien in contravention of the requirements of the City Charter.*

*By reason of the foregoing, the Treasurer must decline to comply with your demand to withdraw the City's tax lien on the above property from the tax lien sale of June 2, 1980.*

Very truly yours,
DAVID N. HILGENDORFF
Corporation Counsel

[Exhibit 2] (Emphasis added).

Subsequently, on May 30, 1980, the last business day prior to the scheduled sale of the tax lien, Westside Federal paid Respondents $757.90, representing the taxes owed by the debtors, to prevent the public sale of the tax lien scheduled for June 2, 1980.

III.

Respondents contend that this Court cannot and should not hold them in contempt because: (a) they did not receive "official notice" from the Court and (b) they did not commit an act in violation of the automatic stay provisions of 11 U.S.C. section 362(a). The Court finds that Respondents' contentions are wholly without merit.

IV.

A tax sale is defined as "the method by which a tax district enforces payment of any delinquent tax lien by sale." N.Y. Real Prop. Tax Law sections 1040(2) and 1102(2) (McKinney 1979). Accordingly, any act committed by Respondents in furtherance

of effecting the sale of the tax lien is an act in violation of section 362(a)(4) and (5).[3] To enforce its tax lien a governmental unit must first "cause a notice of sale to be published" in the newspapers. N.Y. Real Prop. Tax Law section 1002(1) (McKinney Supp.1980). It is clear that by causing the notice of the sale of the tax lien to be published and sending a copy thereof to Westside Federal, Respondents performed an act to enforce its tax lien subsequent to the filing of the debtors' Chapter 13 petitions in violation of 11 U.S.C. section 362(a)(4) and (5).[4]

Nevertheless, prior to receiving the May 2nd letter from counsel for Westside Federal, Respondents did not know nor had reason to know that the debtors had filed a Chapter 13 petition. Accordingly, prior to receiving notice that the debtors had filed a Chapter 13 petition, Respondents did not knowingly and willfully commit an act in violation of the automatic stay provisions of section 362(a). Respondents' conduct after receiving the May 2nd letter from Westside Federal, however, constituted a knowing and willful violation of the automatic stay provisions.

In Respondents' May 22nd letter, they advised Westside Federal that Long Beach "is mandated by the City Charter to sell the tax lien on the [debtors'] premises on June 2, 1980, and does not have any discretionary power to withdraw that tax lien from said sale." (Exhibit 2) By sending this letter to Westside Federal after Respondents had been notified that the debtors had filed a Chapter 13 petition, Respondents ratified and reaffirmed their prior conduct. Moreover, the writing and mailing of the May 22nd letter itself was an act to enforce a lien in violation of section 362(a).

The letter was written to the first mortgagee who, as Respondents were aware, had an interest in seeing that the property would not be further encumbered by the sale of the tax lien. By notifying Westside Federal that it did not consider itself stayed by the automatic stay provisions of the Bankruptcy Code, Respondents were advising Westside Federal that the latter could protect its position by paying the tax arrearage. Respondents' letter served its intended purpose. During the afternoon of May 30, 1980, the last business day prior to the scheduled sale of the tax lien, Westside Federal paid the tax arrearage. (Tr. 30) Thus, by extracting payment from Westwide Federal, Respondents, for all intents and purposes, enforced Long Beach's lien.

## V.

The filing of a bankruptcy petition stays all creditors from performing any act to create, perfect or enforce any lien against property of the estate and property of the debtor. 11 U.S.C. section 362(a)(4) and (5) (1978). cf. *Mueller v. Nugent*, 184 U.S. 1, 15, 22 S.Ct. 269, 275, 46 L.Ed. 405 (1902) (filing of a bankruptcy petition is a caveat to all the world, and in effect an attachment and judgment). The stay is effective upon the date of the filing of the petition, and formal service is not required. See 2 *Collier on Bankruptcy*, ¶ 362.03, 362–26 (15th ed. 1979). Actions taken in violation of the stay are void even when there is no actual notice of the existence of the stay. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Zestee Foods, Inc. v. Phillips Foods Corp.*, 536 F.2d 334 (10th

---

3. 11 U.S.C. § 362(a) provides that:
   (a) Except as provided in subsection (b) of this section, a petition filed under § 301, 302, or 303 of this title operates as a stay, applicable to all entities, of–
   (4) any act to create, perfect, or enforce any lien against property of the estate;
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

4. Property of the estate for purposes of Chapter 13 cases is defined quite broadly in 11 U.S.C. §§ 541, 1306. The term "property of the debtor" is not expressly defined in the Code. However, it would seem that the term includes exempt property and abandoned property. See 11 U.S.C. §§ 522, 554. The debtors have claimed an exemption in the real property in question. Accordingly, Respondents' actions violated both subdivisions (a)(4) and (a)(5) of 11 U.S.C. § 362.

Cir. 1976); *Meyer v. Rowen*, 181 F.2d 715, 716 (10th Cir. 1950); *In re Potts*, 142 F.2d 883 (6th Cir. 1944) *cert. denied* 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945); *See generally 2 Collier on Bankruptcy*, ¶ 362.11 (15th ed. 1979).

This circuit has held that when an entity takes an action in violation of the automatic stay provisions of the bankruptcy laws with knowledge of the filing of a bankruptcy petition and the consequent automatic stay, the creditor is in contempt. It is no defense that the creditor did not receive formal notice of the stay from the court. *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51–52 (2d Cir. 1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Nor is it a defense that the creditor relied on the advice of counsel. *Fidelity Mortgage Investors, supra*, at 58; *See generally 2 Collier on Bankruptcy*, ¶ 362.11 (15th ed. 1979).

■ The fact that the City of Long Beach is a governmental unit as defined in 11 U.S.C. section 101(21), does not immunize it from the automatic stay provisions of 11 U.S.C. section 362(a). The automatic stay provisions of 11 U.S.C. section 362(a) expressly apply to "all entities". 11 U.S.C. section 101(14) provides that "entity includes person, estate, trust, governmental unit." *cf. In re Remke, Inc.*, 5 B.R. 299, 6 B.C.D. 766 (Bkrtcy., B.C.E.D.Mich.1980) (The defense of sovereign immunity is not available to a governmental unit in an action to recover a preference commenced by the debtor or the estate under 11 U.S.C. section 547.)

Moreover, 11 U.S.C. section 106 provides that:

Waiver of sovereign immunity

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units ; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

*Id.* (Emphasis added).

The House Report states that:

With respect to stays issued under other powers, or the application of the automatic stay, to governmental actions, this section and the other sections mentioned are intended to be an express waiver of sovereign immunity of the Federal government, and an assertion of the bankruptcy power over State governments under the Supremacy Clause notwithstanding a State's sovereign immunity.

House Report No. 595, 95th Cong. 1st Sess. (1977) 342, *reprinted in* [1978] U.S.Code Cong. and Ad.News, pp. 5786, 6299.

Accordingly, Respondents were bound by the automatic stay provisions of 11 U.S.C. section 362.

## VI.

■ Respondents contend that the writing and mailing of the letter was not "an act" but merely "a statement of opinion". (Tr. 29). Respondents' contention is specious, at best. The dictionary defines the word "act" as "a thing done". Webster's New Twentieth Century Dictionary 19 (2d ed. 1979). Accordingly, except as otherwise provided in the Code, the provisions of section 362(a) stay any thing done to enforce a lien. The only exception that is even remotely related to the instant case is contained in section 362(b)(8). Section 362(b) provides that:

The filing of a petition under section 301, 302, or 303 of this Title does not operate as a stay—

(8) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency.

*Id.* With this exception, and a similar one contained in 11 U.S.C. section 505(c),[5] all other tax assessment, collection and enforcement proceedings are stayed by section 362(a). *See 2 Collier on Bankruptcy,* ¶ 362.-05[8], 362–40 (15th ed. 1979).

Respondents also suggest that they could have changed their minds and withdrawn the tax lien on the debtors' property from the tax sale. (Tr. 11) The Court finds Respondents' suggestion incredible under the facts and circumstances extant in this case. In their May 22nd letter, Respondents stated that they were "mandated to sell the tax lien regardless of the provisions of the Bankruptcy Code to the contrary." Indeed, Respondents' witness testified that Long Beach's Corporation Counsel had concluded that Respondents were not required to withdraw the tax lien on the debtors' property from the tax lien sale. (Tr. 22–23). In view of Westside Federal's payment of the taxes on May 30th, the last business day prior to the scheduled tax lien sale, the Court finds that it cannot give credence to Respondents' intimation that Respondents could have changed their minds.[6]

The Court finds that Long Beach and its former Corporation Counsel, David N. Hilgendorff, knowingly and wilfully violated the automatic stay provision of section 362(a). The Court also finds that respondent Harrington (by merely transmitting the May 2nd letter to Corporation Counsel) did not perform an act in violation of the stay provision of section 362(a).

This Court's holding is not in conflict with the bankruptcy court's holding in *In re Abt,* 2 B.R. 323, 5 B.C.D. 1237 (Bkrtcy., B.C.E.D.Pa.1980). In *Abt,* a finance company had repossessed the debtor's car after the debtor had filed his Chapter 7 petition, but before the finance company received notice of the filing of the petition. The debtor demanded that the finance company return the car. The finance company refused to honor the debtor's demand. The debtor then moved to hold the finance company in contempt for violating the automatic stay provision of section 362(a). The Court in *Abt* held that the finance company could not be held in contempt since "at the time of repossession HFC had no actual knowledge that the debtor had sought relief under the Bankruptcy Code and that the automatic stay provisions were in effect. (footnote omitted)" *Abt,* 2 B.R. at 325, 5 B.C.D. at 1235. Thus, in *Abt,* the secured creditor had completed the enforcement of its lien prior to receiving notice of the filing of the bankruptcy petition.

In the case at bar, however, while Respondents had committed acts in violation of the automatic stay provisions prior to being advised of the filing of the debtors' Chapter 13 petition, the gravamen of the prohibited conduct, *i. e.* the sale of the tax lien, had not yet occurred. When Respondents were advised of the filing of the debtors' Chapter 13 petition and the consequent automatic stay, Respondents had a duty to withdraw the tax lien on the debtor's property from the tax lien sale. Instead, Respondents, without making any inquiries to the Court, wrote the May 22nd letter. (Tr. 21)

Respondents' refusal to withdraw the tax lien from the tax lien sale after receiving notice of the filing of the Chapter 13 petition and the consequent automatic stay, was a flagrant act in violation of the auto-

**5.** 11 U.S.C. § 505(c) provides that:

Notwithstanding § 362 of this Title, after determination by the Court of a tax under this section, the governmental unit charged with the responsibility for collection of such tax may assess such tax against the estate, the debtor, the successor to the debtor, as the case may be, subject to any otherwise applicable law.

**6.** Respondents have stated that the lot and block numbers used in Mr. Murphy's letter were incorrect. However, as Mr. Murphy pointed out, the address of the property and the names of the owners were given in the May 2nd letter. (Tr. 8). Thus, as Respondents' own witness readily admitted under oath, Respondents could have easily discovered the block number by checking the address. (Tr. 20). Even assuming that the debtors owned more than one piece of property in the City of Long Beach, 11 U.S.C. § 362(a) automatically stays all actions against all property of the estate or of the debtor other than those specifically excepted from the stay.

matic stay provisions of the Code. It is clear that Respondents willfully and deliberately violated the stay provisions of section 362(a). Respondents, by refusing to comply with the automatic stay provision after having received the May 2nd letter, intentionally flouted the authority of this Court. This is not the first time that a state or local government official has refused to recognize the effectiveness of the automatic stay provisions of the bankruptcy laws. Therefore, this Court finds that more extreme punishment of criminal contempt, which serves to vindicate the authority of the court, is required in this case. *In re Stewart*, 571 F.2d 958, 963 (5th Cir. 1978.)

## VII.

### *Bankruptcy Court's Contempt Powers*

Prior to the enactment of the Bankruptcy Reform Act of 1978, the contempt powers of the bankruptcy court were governed by

**7.** Bankruptcy Act § 41, 11 U.S.C. § 69 provides in pertinent part that:

    a. A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ; ... *Provided*, That a person other than a bankrupt or, where the bankrupt is a corporation, its officers, or the members of its board of directors or trustees or of other similar controlling bodies, shall not be required to attend as a witness before a referee at a place more than one hundred miles from such person's place of residence or unless his lawful mileage and fee for one day's attendance shall be first paid or tendered to him.

    b. The referee shall forthwith certify the facts to the judge, if any person shall do any of the things forbidden in this section, and he may serve or cause to be served upon such person an order requiring such person to appear before the judge upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before him, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of the court of bankruptcy or in the presence of the judge.

**8.** Fed.R.Bankr.P. 920 provides that:

    (a) Contempt Committed in Proceedings Before Referee.

Bankruptcy Act section 41[7] and Fed.R. Bankr.P. 920.[8]

Under the Bankruptcy Act, the Bankruptcy Rules limited the bankruptcy court's civil and criminal contempt powers to imposing a fine of not more than $250. The Bankruptcy Code does not contain a section defining the bankruptcy court's contempt powers as did Bankruptcy Act section 41. Assuming that the bankruptcy court is now "a court of the United States", its contempt powers are governed by 18 U.S.C. section 401, which provides that:

    A court of the United States shall have power to punish by fine or imprisonment at its discretion, such contempt of its authority, and none other, as—

    (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

    (2) Misbehavior of any of its officers in their official transactions;

    (1) Summary Disposition by Referee. Misbehavior prohibited by § 41a(2) of the Act may be punished summarily by the referee as contempt if he saw or heard the conduct constituting the contempt and it was committed in his actual presence. The order of contempt shall recite the facts and shall be signed by the referee and entered of record.

    (2) Disposition by Referee upon Notice and Hearing. Any other conduct prohibited by § 41a of the Act may be punished by the referee only after hearing on notice. The notice shall be in writing and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged and whether the contempt is criminal or civil or both. The notice may be given on the referee's own initiative or on motion by a party, by the United States attorney, or by an attorney appointed by the referee for that purpose. If the contempt charged involves disrespect to or criticism of the referee, he is disqualified from presiding at the hearing except with the consent of the person charged.

    (3) Limits on Punishment by Referee. A referee shall not order imprisonment nor impose a fine of more than $250 as punishment for any contempt, civil or criminal.

    (4) Certification to District Judge. If it appears to a referee that conduct prohibited by § 41a of the Act may warrant punishment by imprisonment or by a fine of more than $250, he may certify the facts to the district judge. On such certification the judge shall proceed as for a contempt not committed in his presence.

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

The Bankruptcy Reform Act, however, does limit the bankruptcy court's contempt powers. Section 241(a) of the Bankruptcy Reform Act, added 28 U.S.C. section 1481 which provides that:

A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.

28 U.S.C. section 1481 (1978).

Section 241(a) of the Bankruptcy Reform Act becomes effective on April 1, 1984. *See* Bankruptcy Reform Act section 402(b). However, during the transition period— from October 1, 1979 until March 30, 1984— the bankruptcy courts are empowered to exercise the jurisdiction and powers conferred upon the Court by 28 U.S.C. section 1481. *See* Bankruptcy Reform Act of 1978 section 405(a) and (b). Thus, it would appear that the bankruptcy courts during transition may exercise all the powers contained under 28 U.S.C. section 1481. Unfortunately, the exact nature of the court's contempt powers exercisable during transition is obfuscated by Bankruptcy Reform Act section 404(d). That section, in pertinent part, provides that:

(d) Except as otherwise provided in this section or in section 407 of this Act, matters relating to the office of the United States bankruptcy judges and to United States bankruptcy judges shall continue to be governed during the transition period by the rules set forth in sections 34, 35, 36, 40a, 40b, *41*, and 43 of the Bankruptcy Act as such Act existed on September 30, 1979.

*Id.* (Emphasis added).

Thus, it would appear that Bankruptcy Act section 41 applies during the transition period.

The contempt powers of the court contained in Bankruptcy Act section 41 are much more limited than those contained in 28 U.S.C. section 1481. It is clear that the two provisions are inconsistent. As stated in *Collier on Bankruptcy*:

If 28 U.S.C. § 1481 applies during transition as section 405(b) states, then Section 41 cannot be applicable during the same time and Rule 920 must fall, as well, for its lessening of the broad contempt power given by 28 U.S.C. § 1481 is inconsistent with the latter and must yield under section 405(d). If, on the other hand, the power given the district courts in contempt matters under Section 41 of the 1898 Act, as modified by Rule 920, is to obtain during transition as section 404(d) says, then section 405(b) making 28 U.S.C. § 1481 applicable (as a part of the amendments made by section 241 of title II) is clearly inconsistent.

There is simply no way to reconcile equally valid premises which cause collision between two statutes of this nature. It might be argued, however, that as all of the section 241 amendments are at the heart of the judicial system during transition, those amendments must stand and section 41 of the 1898 Act must be read out of section 404(d).

1 *Collier on Bankruptcy* ¶ 7.04[e], 7–46 (15th ed. 1979).

The Court agrees with *Collier*'s analysis of the problem. Congress has recognized the problem caused by Bankruptcy Reform Act section 404(d), and has sought to remedy it in the Technical Amendments Bill. Section 309(c) of the Technical Amendments Bill provides that: "Section 404(d) of the Act is amended by striking out '41'." S.658, 96th Cong., 2d Sess. section 309(c) (1980); H.R.Rep.No.1195, 96th Cong., 2d Sess. 19, 164, 208 (1980).

In reading 18 U.S.C. section 401 in conjunction with section 28 U.S.C. section 1481,[9] it is clear that all monetary limitations on the bankruptcy judge's power to

---

**9.** Both 18 U.S.C. § 401 and 28 U.S.C. § 1481 apply during the transition period. *See* Bank-ruptcy Reform Act § 405(a) and (b).

punish for civil contempt or criminal contempt committed in his presence have been eliminated in cases filed under the Bankruptcy Code.[10] Thus, to the extent that Fed.R.Bankr.P. 920(a)(3) places a $250 limitation on the power of bankruptcy judges to fine as punishment for civil contempt or criminal contempt in his presence, it is inconsistent with the Bankruptcy Reform Act and is of no further force and effect. *See* Bankruptcy Reform Act section 405(d).

It is also clear that under the Bankruptcy Reform Act, the bankruptcy judge no longer has the power to punish for criminal contempt not committed in his presence. Accordingly, to the extent that Fed.R. Bankr.P. 920(a)(3) empowers the bankruptcy judge to impose a fine of up to $250 as criminal contempt not committed in his presence, it is inconsistent with the Bankruptcy Reform Act and is of no further force and effect.

▪ The bankruptcy court has no power to impose a punishment for criminal contempt not committed in its presence. In such a case, the bankruptcy judge must certify the facts to the district judge. *See* Fed.R.Bankr.P. 920(a)(4). The government is the proper party to prosecute a criminal contempt proceeding before the district judge. *See In re Lahm Industries, Inc.*, 609 F.2d 567 (1st Cir. 1979.) Accordingly, the court shall direct the United States Attorney's office for the Eastern District of New York to prosecute the contempt proceeding before the district judge.

## VIII.

The question remains whether an act in violation of the automatic stay provisions of section 362 amounts to disobedience to the "lawful writ process, order, rule, decree or command" of the bankruptcy court. *See* 18 U.S.C. section 401(3). In *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, *supra*, this circuit held that the contempt power of the courts under section 41(a) and Fed.R. Bankr.P. 920 included the authority to enforce Fed.R.Bankr.P. 11–44 by means of contempt orders, even though "section 41(a) [did] not literally command obedience to 'rules', but only to 'order[s], process[es] and writ[s].' " The Court reasoned that:

Since Rule 11–44 has the effect of an order and was designed to expedite automatically the stay that would otherwise be obtained by an order[2] it would be exalting form over substance to hold that a violation of Rule 11–44 is not punishable under section 41(a) and Rule 920 because technically the rule–based stay is not labeled an "order, process or writ".

[2] For a discussion of court orders designed to stay subsequent proceedings against debtors–in–possession, *see* 1 *Collier on Bankruptcy*, 2.62 (14th ed. 1972). For the purposes of our opinion, the important point is that Rule 11–44 now makes the establishment of such stays automatic. In the absence of such automatic stays, the debtors–in–possession secured specific court orders to the same effect. *We see no reason to treat a stay explicitly granted by the court differently from a stay established by rule, at least with respect to the courts' enforcement powers via contempt.*

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*, *supra*, at 52, 53. (Emphasis added).

The second circuit's reasoning in *Fidelity Mortgage Investors* is equally applicable in the case at bar. The automatic stay provisions of section 362(a) were designed to expedite automatically the stay that would otherwise be obtained by an order.[11]

Indeed, the Technical Amendments Bill contains a provision that would codify the

---

10. The bankruptcy judge may not punish a criminal contempt warranting a punishment of imprisonment, whether or not committed in the judge's presence. *See* 1 *Collier on Bankruptcy*, ' 3.01[v] (15th ed. 1979). *See also* Murphy, Creditor's Rights in Bankruptcy, § 2.04, 2–10 n.1 (1980).

11. The House Report makes a reference to this in speaking of those actions against the debtors that are not automatically stayed.

By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay.

House Report No.95–595, 1st Sess. (1977) 342, *reprinted in* U.S.Code Cong. & Ad.News, p. 6298.

Court's holding in *Fidelity Mortgage Investors*, by amending 28 U.S.C. section 1481 to include the following subsection:

> (b) A contempt punishable by a bankruptcy court includes any act that is in violation of a stay under title 11.

S.658, 96th Cong., 2d Sess. section 225 (1980); H.R.Rep.No.1195, 96th Cong., 2d Sess. 157, 206 (1980).

### Conclusion

In accordance with Fed.R.Bankr.P. 920, this Court will certify the facts to the District Court.

So Ordered.