**In re MARINE POLLUTION SERVICE, INC. t/a Certified Concrete Co., Debtor.**

**In re TRANSIT MIX CONCRETE CORP., Debtor.**

**David M. BRODSKY, as Trustee for Transit Mix Concrete Corporation, Plaintiff,**

**v.**

**INDEPENDENT CEMENT CORPORATION, Defendant.**

**Bankruptcy Nos. 87 B 11548(CB), 87 B 11642(CB).**

**Adv. No. 88–5593A.**

United States Bankruptcy Court, S.D. New York.

March 28, 1989.

---

See also, 2d Cir., 857 F.2d 91.

Schulte, Roth & Zabel, New York City, for David Brodsky, trustee for Transit Mix Concrete Corp. (Roger Mead and Anju Uchima, of counsel).

Breed, Abbott & Morgan, New York City, for defendant (C. Macneil Mitchell and Abner T. Zelman, of counsel).

## DECISION ON DEFENDANT'S MOTION TO DISMISS

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

### Facts

Transit Mix Concrete Corp. ("Transit Mix") filed its reorganization petition under Title 11 of the United States Code (the "Bankruptcy Code" or "Code") with this Court on or about August 24, 1987. Transit Mix operated its business and managed its properties as a debtor-in-possession under §§ 1107 and 1108 of the Code until September 9, 1987.

This Court approved the United States Trustee's appointment of David M. Brodsky as the Trustee for Transit Mix by order dated September 9, 1987. That order provided that the Trustee shall have the powers of a trustee under § 1106(a) of the Bankruptcy Code and authority to operate the business of Transit Mix pursuant to § 1108 of the Bankruptcy Code.

Transit Mix was involved in the business of manufacturing, producing and distributing ready mix concrete in the New York City area. Its assets and property include real estate associated with its manufacturing plants, related fixtures and equipment, trucks, cash, inventory, accounts receivable and various rights and privileges arising out of executory contracts, licenses and leases (collectively, the "Transit Mix Assets").

The Transit Mix Assets include certain real property and the improvements erected thereon located at 39–01 23rd Street, 23–02 39th Avenue, 39–01 22nd Street, 22–02 39th Avenue and 39–02 23rd Street, Queens, New York (collectively, the "Astoria Garage").

Transit Mix suspended its operation on or about August 12, 1987, prior to the filing of its reorganization petition, and to date has not resumed operations.

The District Court, in an action captioned *United States of America v. Anthony Salerno, et al.*, Case No. 86 CR 245, entered an "Order of Restraints and Prohibitions" dated March 21, 1986, (the "Restraining

Order") under 18 U.S.C. § 1961 *et seq.* ("RICO").

The Restraining Order provides in relevant part:

> The companies owned and controlled by the defendants, ... Transit Mix Concrete, and Certified Concrete, as those entities are defined above, shall not without further order of this Court, and upon seventy-two (72) hours prior, written notice to the United States, transfer, sell, assign, pledge, hypothecate, encumber, dissipate or move in any manner, or cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, dissipated or moved in any manner, any property or other interest owned or held by one or more of said companies, except as expressly provided in ... this Order.
>
> \* \* \* \* \* \*
>
> Prior approval of this Court shall not be necessary for the following expenditures made by officers or employees of ... Transit Mix Concrete and Certified Concrete, as those entities are defined above, if such expenditures are made in the ordinary course of business of said companies.
>
> (a) purchase of supplies and equipment in an arm's length transaction;
>
> (b) use of supplies and equipment in the performance of contracts which are executed and in effect at the time of the signing of this Order;
>
> (c) payment of liabilities which existed at the time of the signing of this Order except for payments to any of the defendants;
>
> (d) payment of reasonable business salaries except for payments to any of the defendants;
>
> (e) payment pursuant to an arm's length transaction for the normal and average upkeep or maintenance of any real property, supplies or equipment necessary for ordinary business operations.

The Restraining Order was served upon the officers of Transit Mix. Independent Cement ("Independent") sold cement to Transit Mix on an ongoing basis from January 1985 to November 1986. Independent sent invoices to Transit Mix on a monthly basis for cement sold to Transit Mix. Independent extended a payment term of 60 days to Transmit Mix. In or about September 1986, months after the entry of the Restraining Order, Transit Mix fell into arrears in its payments to Independent for cement purchased from Independent.

On October 20, 1986, Transit Mix and Independent entered into a repayment agreement (the "Repayment Agreement") which set forth a schedule for payment by Transit Mix of amounts then owing to Independent for the purchase of cement and for future payments.

On October 20, 1986, Edward J. Halloran ("Halloran"), the Chairman of the Board of Directors of Transit Mix, executed a personal guarantee (the "Guarantee") of the Repayment Agreement.

By verified complaint dated December 1, 1986 (the "Complaint"), Independent commenced an action entitled *Independent Cement Corporation v. Transit Mix Corporation and Edward J. Halloran,* Index No. 27785/86 in the New York State Supreme Court, New York County (the "Action").

In the Complaint, Independent alleged that Transit Mix had defaulted under its Repayment Agreement and that Halloran had defaulted under the Guarantee. Independent sought to recover the principal amount it alleged Transit Mix owed for the purchase of cement, $2,619,637.61, together with interest accrued thereon.

On December 23, 1986, Halloran executed a Confession of Judgment in the Action in both his personal and official capacity on behalf of Transit Mix (the "Confession of Judgment"). In the Confession of Judgment, Halloran acknowledged that Transit Mix had defaulted under the Repayment Agreement, that he had defaulted under the Guarantee and that he and Transit Mix were jointly and severally liable to Independent for the amount of $2,596,-760.39, the principal amount owed by Transit Mix for cement purchased from Independent, and interest from September 1, 1986.

On December 29, 1986, the Confession of Judgment was docketed and filed in New York State Supreme Court, New York County by the clerk of that court. The Transcript of Judgment was filed with the clerk of New York State Supreme Court, Queens County on April 24, 1987. Said Transcript of Judgment was not docketed, however, until June 9, 1987.

As stated above, Transit Mix filed its reorganization petition under chapter 11 of the Code with this Court on or about August 24, 1987.

Independent, by proof of claim dated June 15, 1988, claims the amount of $1,358,654.12, exclusive of interest, against Transit Mix. This figure represents the amount of the Confession of Judgment, $2,596,730.39 less $1,238,106.27, the sum paid after the entry of the Restraining Order by Transit Mix pursuant to the Confession of Judgment.

By order dated June 23, 1988 (the "Sale Order"), this Court authorized the Trustee to sell the Astoria Garage for $3,300,000, free and clear of all liens and encumbrances. Pursuant to the Sale Order, the claims and interests of all parties against the Astoria Garage, including the judicial lien asserted by Independent, will attach to the proceeds of the sale of the Astoria Garage, without prejudice to the right of the Trustee to challenge such claims and interests.

On July 8, 1988, by service of a summons and complaint, the Trustee for Transit Mix objected to the allowance of the claim of Independent filed in the above-captioned case in the amount of $1,358,654.12 pursuant to 11 U.S.C. §§ 502(a), (b)(1) and (d) and Bankruptcy Rule 3007. Additionally, pursuant to 11 U.S.C. §§ 544(b), 547, 548(a) and 550, the Trustee sought to avoid and recover certain transfers of property made by Transit Mix to Independent. Finally, pursuant to 11 U.S.C. § 557, Transit Mix sought to preserve all avoided liens for the benefit of the estate.

On or about July 22, 1988, Independent Cement commenced a proceeding in the New York Supreme Court, Queens County, pursuant to Article 78 of the New York Civil Practice Law and Rules, captioned *In the Matter of the Application of Independent Cement Corporation, Petitioner for a Judgment Pursuant to Article 78 of the CPLR against John J. Durante County Clerk and Clerk of the Supreme Court, Respondent,* Index No. 09907/88 (the "Article 78 Proceeding").

The verified petition was filed by Independent after the Trustee filed his initial objection to the allowance of Independent Cement's claim and Complaint to avoid Independent's judgment lien as a preference.

In its verified petition, Independent requested that a judgment be entered (i) directing the Queens County Clerk and the Clerk of the Queens Supreme Court to change the date of the Clerk's docket entry of the Judgment against Transit Mix from June 9, 1987 to April 24, 1988—the date when Independent Cement alleges that it filed the Transcript of Judgment with the Queens County Clerk and (ii) awarding Independent monetary damages in the amount of $1,358,654.12 against the Queens County Clerk and Clerk of the Supreme Court, being the unsatisfied amount of the Judgment.

In its verified petition, Independent alleged that:

If the Judgment had been docketed when filed—or even within one month of such time—it would have been a lien prior to the outside of the preference period, and Petitioner's lien would not be subject to avoidance on that basis.

(Verified Petition at ¶ 7)

By Stipulation (the "Stipulation") dated August 24, 1988 and so ordered by the Supreme Court, Queens County "[t]he parties agree[d] that respondent should change his docket in the manner requested in the Verified Petition." (Stipulation at ¶ 3).

Moreover, the Stipulation authorized and directed [the Clerk] (1) to change his official docket of judgments, *nunc pro tunc,* by entering the time and date of docketing of the Judgment as 9:24 a.m. on April 24, 1987, in place and stead of the time and date of 9:24 a.m. on

June 9, 1987, and thereafter (2) to do all other and further acts or entries within the scope of his office or authority reasonably necessary to make the docketing of the Judgment in Queens effective for all purposes and against all persons as if originally docketed at 9:24 a.m. on April 24, 1987.

(Stipulation at ¶ 4).

By motion dated August 31, 1988, Independent sought to dismiss the second claim for relief in the Complaint. The second claim for relief by the Trustee sought to have the docketing of the Transcript of Judgment and the resulting judicial lien be deemed a transfer avoidable by the Trustee under Bankruptcy Code § 547. Independent additionally sought to stay all remaining proceedings pending the determination of a motion to withdraw the reference as to the first claim for relief. The first claim for relief sought by the Trustee sought to avoid the Confession of Judgment to Independent under §§ 544(b) and 548(a)(1) of the Bankruptcy Code and Section 276 of the New York Debtor and Creditor Law.

Independent by Amended Proof of Claim dated September 23, 1988, claims the amount of $1,342,937.36 including interest, against Transit Mix. This amount represents the amount of the Confession of Judgment, $2,596,730.39, less $1,375,-873.47, the amount paid after the entry of the Restraining Order by Transit Mix pursuant to the Confession of Judgment.

On October 24, 1988, by service of a Supplemental Summons and Complaint (the "Supplemental Complaint"), the Trustee under Fed.R.Bankr.P. 7001(2) and 7001(9) additionally sought to determine the validity of the alleged lien of Independent in Transit Mix's property (as defined by § 541 of the Bankruptcy Code) and under 11 U.S.C. §§ 362(h) and 105 and Fed.R.Bankr.P. 9020(b) to find Independent in contempt of court by its action in attempting to perfect its alleged lien in willful violation of the automatic stay.

By motion dated on or about November 23, 1988, Independent sought to dismiss not only the claims for relief set forth in its motion dated August 31, 1988, but also two other claims for relief. Additionally, Independent sought the determination that neither the Article 78 Proceeding, nor the Stipulation and Order, nor the actions taken by the Queens County Clerk pursuant to said Order were in violation of the automatic stay pursuant to Code § 362(a). Finally, Independent sought not to be held in contempt, nor be charged with damages in respect of such alleged stay violations. Said motion came before this Court on January 18, 1989, and is the subject matter of this decision. At that hearing, this Court denied Independent's motion to stay all proceedings pending the determination of a motion to withdraw the reference as to the first claim for relief.

This decision will focus on Independent's motion to dismiss the Trustee's third and fourth claims for relief as set forth in the Trustee's Supplemental Complaint. The Supplemental Complaint sought: (a) a declaration that the retroactive change in the docket date with respect to the Transcript of Judgment was null and void because it was obtained in violation of the automatic stay of § 362 of the Bankruptcy Code (the Trustee's third claim for relief); and (b) an award of attorneys' fees and punitive damages on the grounds that Independent commenced the Article 78 proceeding in willful violation of the automatic stay (the Trustee's fourth claim for relief).

### Discussion

It is well-settled that for purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pleaded material allegations of the complaint and any reasonable inferences to be drawn from those allegations are deemed admitted. *See, e.g., CBS, Inc. v. Springboard International Records,* 429 F.Supp. 563, 567 (S.D.N.Y.1976). A Rule 12(b)(6) motion tests the *legal* sufficiency of the complaint, which "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78

S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (emphasis added).

In its second claim for relief, the Trustee seeks to avoid, as a preferential transfer under § 547 of the Bankruptcy Code, Independent's judicial lien upon Transit Mix property in Queens County, pursuant to § 550 of the Bankruptcy Code, to recover the amount of $40,806.47 paid by Transit Mix to Independent pursuant to the Confession of Judgment within 90 days of the filing of the petition.

After a close reading of the Complaint and Supplemental Complaint, it is clear to this Court that the Trustee has stated a valid claim under §§ 547 and 550 of the Bankruptcy Code. The factual allegations set forth in support of the second claim for relief, if proven, will entitle the Trustee to a judgment that the judicial lien is null and void as a preferential transfer under § 547 of the Bankruptcy Code and that funds paid pursuant to any indebtedness that gave rise to the judicial lien should be returned to Transit Mix pursuant to § 550 of the Bankruptcy Code. Accordingly, Independent's motion to dismiss the second claim for relief is denied.

### The Automatic Stay

■ In his third claim for relief the Trustee seeks a determination that the Queens County Clerk's post-petition alteration of his official docket to show that Independent's judicial lien arose on April 24, 1987, rather than June 9, 1987, is null and void because the alteration was obtained in violation of the automatic stay provisions of §§ 362(a)(1), (3) and (4) of the Bankruptcy Code.

The primary goal of Chapter 11 is the financial resuscitation of an ailing business. To achieve this goal, a debtor needs breathing room—an opportunity to recoup its strength, evaluate its position, and strike an accord with its creditors. To further this goal, § 362 imposes upon the filing of a bankruptcy petition, an automatic stay of most types of proceedings against the debtor or its property. Michael A. Gerber, *Business Reorganizations*, p. 452 (1986). The Code's legislative history describes the purposes and operation of the automatic stay as follows:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protections. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.

H.R. Rep. 95–595, 95th Cong., 1st Sess. 340 (1970), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6296.

Subsections (2) through (4) of § 362(a) stay actions against, or to obtain possession of, or to create, perfect, or enforce a lien against "property of the estate." Section 541(a) broadly defines property of the estate as including "all legal or equitable interests of the debtor in property, both tangible and intangible, wherever located, as of the date the case is commenced." § 541(a)(6); H.R. Rep. 95–595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978 p. 6322.

Independent argues first that the Article 78 Proceeding was not an action or proceeding against the Debtor within the meaning of § 362(a)(1) because Transit Mix was not a named party defendant to the proceeding and was not a necessary party who should have been joined as a defendant.

Quite obviously, the Article 78 Proceeding affected, and was intended to affect the Trustee and the property of the Transit Mix estate. The purpose of the Article 78 Proceeding was to bolster Independent's defense of the instant adversary proceeding and to enhance its position as a creditor. Independent sought, through the Article 78 Proceeding, to remedy a lien that was subject to avoidance as a preference,

thereby rendering its lien non-avoidable, and materially improving its position vis-a-vis other creditors of Transit Mix. Under these circumstances, Transit Mix should have been given notice of the Article 78 Proceeding and joined as a necessary party pursuant to § 1001(a) of the New York Civil Practice Law. *See, e.g., Vergari v. Ward,* 390 N.Y.S.2d 390 (Sup.Ct. Albany Co. Special Term 1977), *aff'd* 70 A.D. 949 (3d Dept.1978).

Additionally, for the same reasons that Transit Mix was a necessary party to the Article 78 Proceeding commenced by Independent, it was also a real party in interest. Because the Article 78 Proceeding involved Independent's efforts to enhance its claim to the property of Transit Mix, Transit Mix was clearly not, as Independent Concrete suggests, a "nominal party."

Finally, Independent argues that the Article 78 Proceeding was not an act to enforce a lien against property of the estate within the meaning of § 362(a)(4). This argument is simply without merit. The Article 78 Proceeding and the execution of the Stipulation Order directing the *nunc pro tunc* docket date change from June 9, 1987 to April 24, 1987 were acts taken by Independent to create and perfect a "non-avoidable" lien in lieu of its avoidable lien. Such acts can only be considered a violation of § 362(a)(4). *See, e.g., Matter of Maas,* 69 B.R. 245 (Bankr.M.D.Fla.1986).

### Independent's Willful Violation of the Automatic Stay

In his fourth claim for relief, the Trustee seeks damages, including costs, attorneys' fees and punitive damages pursuant to § 362(h) of the Code as a result of Independent's willful violation of the automatic stay.

Section 362(h) provides that:

An individual injured by any *willful* violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees and in appropriate circumstances, may recover punitive damages. (emphasis added)

The following factual allegations support the fourth claim for relief and clearly states a claim under § 362(h):

(a) Independent had actual knowledge that Transit Mix filed its reorganization case on August 24, 1987 and that the Trustee was appointed to operate Transit Mix (Supp.Compl. ¶ 60);

(b) Independent commenced the Article 78 Proceeding without giving notice to the Trustee or Transit Mix (Supp.Compl. ¶ 63);

(c) Independent entered into the Stipulation without giving notice to the Trustee or Transit Mix (Supp.Compl. ¶ 63).

Independent bases its motion to dismiss the Trustee's fourth claim for relief upon its contention that "even assuming, *arguendo,* that a technical violation of the stay occurred as a result of [its] acts," such a violation was not willful. Defendant's Memorandum of Law dated November 22, 1988 at p. 13. This bare contention is insufficient on a motion to dismiss to overcome the Trustee's allegation in the Supplemental Complaint. *See, supra* p. 214. Accordingly, Independent's motion to dismiss on the Trustee's fourth claim is denied.

▮ Independent's violation of the automatic stay was much more than a "technical" one. It cannot be disputed that Independent knew of Transit Mix's Chapter 11 filing and the automatic stay at the time it commenced the Article 78 Proceeding. Independent commenced the Article 78 proceeding nearly one year after the filing of Transit Mix's Chapter 11 petition, and two weeks after being served with the Trustee's original complaint in this proceeding.

Independent's unilateral decision to proceed with its Article 78 Proceeding in New York State Court with no notice to the Trustee, to Transit Mix or to this Court was a calculated attempt to take its claim to Transit Mix's property out of the hands of this Court and to avoid the automatic stay provisions of the Code. Such egregious conduct cannot and will not be tolerated by this Court.

Generally, actions taken in violation of the stay are void and without effect. 2 *Collier on Bankruptcy*, ¶ 363.11 (15th ed. 1979). In fact, actions taken in violation of the stay are void even where there is no actual notice of the existence of the stay. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *In re Eisenberg*, 7 B.R. 683, 687 (Bankr.E.D.N.Y.1980); *see, generally*, 2 *Collier on Bankruptcy*, ¶ 362.04 (15th ed. 1979). At bar, not only did Independent have constructive notice of the automatic stay by the filing of the petition, but also actual notice when they received Transit Mix's original Complaint which set forth Transit Mix's filing of bankruptcy in the first paragraph. Therefore, Independent's Article 78 Proceeding and the results thereafter obtained are void and without effect.

The last issue this Court must consider is the "willfulness" of Independent's action with respect to violating the automatic stay. Under the Code, a debtor may recover "actual damages including costs, attorneys' fees, and punitive damages for a *willful* violation of the automatic stay." 11 U.S.C. 362(h) (emphasis added).

For purposes of § 362(h) courts have held willful to mean either deliberate or intentional. *In re Rinehart*, 76 B.R. 746, 756 (Bankr.D.S.D.1987), *aff'd, U.S. through Small Business Admin. v. Rinehard*, 88 B.R. 1014 (D.S.D.1988); *In re Mewes*, 58 B.R. 124, 128 (Bankr.D.S.D. 1986). When there is actual notice of the filing, there is a presumption that the action taken was deliberate or intentional. *In re Shafer*, 63 B.R. 194, 198 (Bankr.D. Kan.1986); *In re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 108 (Bankr.N.D. Tex.1984).

In the instant case, Independent had actual notice of the filing as evidenced by receiving Transit Mix's original Complaint which set forth the filing of a Chapter 11 petition. After receiving notice of the petition, Independent's attorneys proceeded to State Court without seeking permission from this Court for relief from the automatic stay. Independent and their attorneys cannot use the excuse that they believed their actions constituted a "technical" violation of the automatic stay and as such are exempt from the automatic stay.

In *In re AM International, Inc.*, 46 B.R. 566 (Bankr.M.D.Tenn.1985), it was held that defendant Commerce Union Bank (hereinafter "CUB") knowingly violated the automatic stay after becoming aware of AM International's bankruptcy. Furthermore, as a sophisticated commercial institution familiar with the application and broad scope of the automatic stay, CUB knew or should have known that its actions would improperly interfere with the orderly collection and distribution of AM International's assets.

Like the defendant in *In re AM International, Inc.*, 46 B.R. 566 (Bankr.M.D.Tenn. 1985), Independent is a sophisticated commercial institution and should be quite familiar with the broad application of the automatic stay. Additionally, Independent's counsel, a large law firm fully familiar with commercial law as well as the Bankruptcy Code, should not have assumed this Court's granting of relief from the automatic stay to proceed in State Court. There was no effort on the part of Independent's counsel to seek a clarification by this Court as to their right to proceed in State Court. When a party acts in knowing violation of the stay they take the risk that their actions will be found wrongful. *Id.* at 578. A more prudent course of conduct would have been to file a motion for relief from the automatic stay. Instead, Independent's counsel took the situation into its own hands, thus running the risk of being subject to the perils of § 362(h).

After now learning of the substance of the Article 78 Proceeding, this Court may have been inclined to allow Independent to proceed with its Article 78 Proceeding in State Court. Notwithstanding this Court's possible inclination, counsel for Independent acted with arrogant defiance of the Federal Bankruptcy law.

In light of the above, this Court shall award costs and attorneys' fees to the Trustee. These costs and attorney's fees shall consist of the time spent in preparing the Trustee's Supplemental Complaint and

in opposing Independent's motion to dismiss based on the result of the Article 78 proceeding.

This Court has also deemed it appropriate to award punitive damages to the Trustee in the amount of $2,000. Various courts have interpreted § 362(h) broadly and have awarded punitive damages. *Budget Service Company v. Better Homes of Virginia, Inc.*, 52 B.R. 426 (E.D.Va.1986), *aff'd* 804 F.2d 289 (4th Cir.1986) (punitive damages awarded where defendant knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it). *In re Heafitz*, 85 B.R. 274 (Bankr.S. D.N.Y.1988) (punitive damages awarded where "self-help" engaged in without seeking relief from automatic stay). Accordingly, punitive damages are appropriate as counsel for Independent engaged in a calculated method of self-help in seeking to create a lien on the property of Transit Mix that would not be subject to avoidance as a preference, in order to bolster its position in this adversary proceeding.

While this Court is cognizant of its contempt power, we choose not to hold Independent in contempt. In *Budget Service*, the court chose to avoid the issue of the bankruptcy court's authority to hold offending parties in contempt, and instead proceeded on other grounds referring to the punishment as "sanctions" rather than "contempt." Thus, so long as the punishment imposed is labeled punitive damages and not punishment for contempt, the bankruptcy judge is on safer grounds and no one's sensibility is offended. *Norton Bankruptcy Rules Pamphlet*, p. 844 (1988–1989 Ed.).

### CONCLUSION

Independent's motion to dismiss on the Trustee's second, third and fourth claims for relief are denied. The Trustee is hereby directed to submit supporting documents setting forth his attorneys' fees and costs in preparing the Trustee's Supplemental Complaint and in opposing Independent's motion to dismiss based on the result of the Article 78 Proceeding. As stated above, this Court deems it appropri-

ate to award punitive damages to the Trustee in the amount of $2,000.

Settle Order on five (5) days notice consistent with this decision.