**In re William F. MILLER, Debtor.**

**William F. MILLER, Plaintiff,**

v.

**The SAVINGS BANK OF BALTIMORE, Defendant.**

Bankruptcy No. 80–2–2374–L.
Civ. A. No. J–81–3281.
Adv. No. 81–0010.

United States District Court,
D. Maryland.

July 28, 1982.

Lawrence O. Burman, Baltimore, Md., for plaintiff.

F. Thomas Rafferty, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

The Savings Bank of Baltimore (Bank) has appealed from the order of the Bankruptcy Court, 10 B.R. 778, adjudging the Bank guilty of contempt and ordering that it pay the debtor, William F. Miller, $856 in damages. Memoranda and oral arguments of counsel have been considered.

The material facts are not in dispute. Miller was an owner of a 1979 Plymouth Duster, which was subject to a security interest in favor of the Bank. Miller defaulted on the security agreement, and as a consequence, the Bank repossessed the automobile on the morning of January 2, 1981. At the time of repossession, the Bank was unaware that Miller had filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978, on December 15, 1980. The Bank was told about that filing by Miller's attorney later in the morning of January 2, 1981, but refused to return the automobile to Miller. Instead, the Bank offered, on January 6, 1981, to deliver the vehicle to the Trustee of Miller's estate pursuant to the turnover provisions of 11 U.S.C. § 542(a).[1]

The fact pattern presented in this case, the repossession of an automobile by a secured party without notice that the debtor had filed a petition for relief under the Bankruptcy Act, and the subsequent refusal of the secured party to return the vehicle after it has been informed of that filing, is hardly a novel one. Those courts which have reached this issue have held with near unanimity that the refusal to return the vehicle in such a situation is contemptuous, and the secured party must make good the damages suffered by the debtor as a result of the wrongful retention of the vehicle. *E.g., In re Johnson,* 18 B.R. 755 (Bkrtcy.S.D. Ohio 1982); *In re Wariner,* 16 B.R. 216 (Bkrtcy.N.D.Tex.1981); *In re Endres,* 12 B.R. 404 (Bkrtcy.E.D.Wis.1981); *but see In re Abt,* 2 B.R. 323 (Bkrtcy.E.D.Pa.1980).

The Bank appeals on several grounds. First, it argues that its actions cannot be considered contemptuous because no formal order was entered directing it to return the vehicle to Miller. The filing of a bankruptcy petition stays all creditors from performing any act to create, perfect or enforce any lien against property of the

1. The Bank moved, pursuant to Bankruptcy Rule 752(a) that the Bankruptcy Court make an additional finding of fact that the Bank did so offer to deliver the automobile to the Trustee.

That motion was denied, and the Bank appeals the denial of that motion. For purposes of this appeal, the Court will assume that the Bank did offer to deliver the vehicle to the Trustee.

estate and property of the debtor. 11 U.S.C. § 362(a)(4) and (5) (1978). The stay is effective upon the date of the filing of the petition, and formal service is not required. *In re Eisenberg*, 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980); *see Collier on Bankruptcy*, § 362.03 (15 ed. 1979). The automatic stay provisions are treated as specific and definite orders of the Court. *In re Mealey*, 16 B.R. 800, 802 (Bkrtcy.E.D. Pa.1982); *In re Norton*, 15 B.R. 623 (Bkrtcy. E.D.Pa.1981). Therefore, a wilful violation of the automatic stay is contemptuous.

■ The Bank's second contention is that, even if the automatic stay provisions of 11 U.S.C. § 362 are to be treated as the equivalent of orders of Court for contempt purposes, the Bank's retention of the vehicle after it had received notice of the filing of the petition was not prohibited by § 362.[2] Although 11 U.S.C. § 362 prevents creditors from taking certain actions to improve their positions following the filing of a petition for relief by the debtor, the Bank argues that it does not direct creditors to take any affirmative action. Article 11 U.S.C. § 362 does not expressly provide that a creditor take affirmative action on receiving notice of the filing of a petition in bankruptcy. In contrast, § 542 expressly directs an entity in possession of certain property of the debtor or his estate on the date of a filing of a petition for relief to deliver that property to the Trustee. In addition, a Trustee may invoke § 549 to avoid an unauthorized postpetition transfer and, in certain circumstances, the debtor may do so pursuant to § 522(h). The Bank argues that the Bankruptcy Court erred in holding that it had an "implied duty" under § 362 to return the vehicle in light of the express provisions outlined above for the return of property to the debtor or Trustee.

To hold, as the Bank urges, that the remedies provided by those provisions are exclusive would emasculate the protections accorded the debtor under section 362. The automatic stay is intended to give the debt-

or a breathing spell from his creditors. By establishing an immediate status quo and preventing the seizure of property from the estate or the continuation of pending creditor actions, it attempts to protect the debtor from harassment, bother and contact for a reasonable period of time and prevent creditors from engaging in a "race of diligence" which could enable a creditor to obtain more than its equitable share of the debtor's estate. See H.Rep.No. 95–495, Cong., 1st Sess. 340–2 (1977); S.Rep.No. 95–989, 95 Cong., 2d Sess. 49–51 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977 (Bkrtcy.N.D.Ga.1980).

The courts have been quick to realize that creditor inaction can often be as disruptive to the debtor as affirmative collection efforts. *E.g., In re Elder*, 12 B.R. 491, 494 (Bkrtcy.M.D.Ga.1981) ("No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay.") In recognition of this problem, creditors have been required, when necessary, to take affirmative steps to restore the status quo at the time of the filing of the petition for relief. *See In re Norton*, 15 B.R. 627 (Bkrtcy.E.D.Pa.1981) (retention of tax refund by I.R.S. held contemptuous); *In re Howren*, 10 B.R. 303 (Bkrtcy.D.Kan.1981) (withholding by university of debtor's transcript violated automatic stay); *In re Eisenberg*, 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980) (refusal by city to withdraw tax lien from tax lien sale contemptuous). To place the onus on the debtor, as the Bank would have the Court do, to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory. *See Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.*, 400 F.Supp. 280, 285 (N.D.Ga.1975); *In re Reed*, 11 B.R. 258, 274 (Bkrtcy.D.C.Utah 1981). In the instant case, for example, the Bankruptcy

---

2. Although the initial repossession of the vehicle itself violated the automatic stay provisions of § 362, it was not contemptuous since it was

done without actual knowledge that Miller had sought relief under the Code. *In re Abt*, 2 B.R. 323 (Bkrtcy.E.D.Pa.1980).

Court found that the refusal by the Bank to return the automobile to Miller caused him to be suspended from his job because he had no means of transportation to his place of employment. A debtor such as Miller, whose precarious financial situation has forced him to file a petition for relief under the Bankruptcy Act, and is in need of his automobile to prevent his economic situation from deteriorating further, is faced with a Hobson's choice by the Bank's action in refusing to return the automobile. He can either file a complaint for the return of the vehicle or he can reach some financial accommodation with the Bank to induce it to return the vehicle. Until he can obtain a court order for return of the vehicle or agrees to the ransom demanded by the creditor,[3] the debtor is deprived of the use of that property. Such a result is incompatible with the goal of preserving the status quo at the time of the filing of a petition for relief under the Bankruptcy Act without the necessity of resort to further legal action.

The Bank next argues that the Bankruptcy Court erred in implying a private cause of action for a violation of § 362. Assuming, *arguendo*, that a private right of action may not be implied for a violation of § 362, it does not follow that damages may not be awarded pursuant to the civil contempt powers of the Bankruptcy Court. *In re Gorin*, 18 B.R. 151 (Bkrtcy.D.Conn.1982). Under its civil contempt powers, the Bankruptcy Court has authority to award damages to persons injured by the contemnor's wrongful conduct. *In re Gorin, supra; In re Reed*, 11 B.R. 258, 276 (Bkrtcy.D.Utah 1981).

Finally, the Bank argues that the order of the Bankruptcy Court that the Bank need not return the automobile to Miller until the Bank was satisfied that Miller had obtained insurance for the vehicle implicitly recognized that the retention

of the automobile by the Bank at a time when Miller had allowed his automobile insurance to lapse was not wrongful. It does not follow from the fact that the Bankruptcy Court may condition a debtor's right to possession of his automobile upon his obtaining adequate insurance for that vehicle that private parties are free to unilaterally do the same. Section 362 contains provisions by which a creditor, upon proper application to the Bankruptcy Court, may obtain relief from the automatic stay. A creditor who employs self-help instead does so at its own risk. The order of the Bankruptcy Court is, therefore, affirmed.

---

**3.** As a practical matter, a debtor who has an urgent need for the use of the vehicle is more likely to be coerced into reaching a financial accommodation with the creditor if his exclusive remedy is the return of the vehicle without the possibility of an award of damages caused

by the creditor's retention of the automobile. Such a situation would produce the anamolous result that a creditor would be able to improve his position by virtue of his unlawful repossession of the vehicle.