Charles D. Ross, Dayton, Ohio, for defendant Mellon Mortg., Inc.

William N. Merrell, Huber Heights, Ohio, for debtor, Heather Wyatt.

George W. Ledford, Englewood, Ohio, trustee.

**In re Heather WYATT, Debtor/Plaintiff,**

**v.**

**MELLON MORTGAGE, INC.,—EAST and George W. Ledford, Trustee, Defendants.**

**Bankruptcy No. 3–82–02744.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 26, 1984.

### DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the court is debtor's complaint for violation of the automatic stay provisions of 11 U.S.C. § 362. Trial was held on November 16, 1983, with supporting briefs filed on November 29 and December 12, 1983.

### BACKGROUND FACTS

On or about July 29, 1982, Defendant-Creditor, Mellon Mortgage, Inc.,—East, [Mellon] filed a complaint against debtor in the Common Pleas Court of Montgomery County, Ohio, to foreclose on its mortgage

on certain rental property located in Huber Heights, Ohio.

Subsequently, on September 30, 1982, Debtor-Plaintiff, Heather Wyatt, filed a Chapter 13 petition and Plan in this Court. A Section 341 meeting was held on October 26, 1982 and the Plan was confirmed on November 2, 1982. After the Chapter 13 Plan was filed, Mellon discontinued the foreclosure action, which was then dismissed.

Mellon through its agents regularly inspected the property, allegedly in accordance with applicable H.U.D. regulations. It was aware that the property was rental property.

Former tenants left the property on May 31, 1983, and it was re-rented for $350.00 a month on July 16, 1983. On May 31, Wyatt and a friend inspected the house and property, both later testifying at trial that everything seemed in working order, including the air conditioner and the water heater. Wyatt did not report the vacancy to Mellon. Wyatt maintained rental dwelling insurance on this property.

On June 21, 1983, during one of Mellon's inspections, two of Mellon's agents entered upon the property. Both testified it was in good shape, with a "For Rent" sign prominently displayed in the front yard. One agent even spoke with a prospective tenant who was inspecting the premises. Neither agent made any attempt to contact either the realtor rental agency with a sign in the front yard or Wyatt, even though Wyatt testified that she lived only three blocks away.

Instead, the two agents entered the house, changed the locks, drained the water tank, cut off the power and disconnected the water supply. Additionally, they damaged the water heater and the air conditioner. Mellon claims this action was taken to "winterize" the house, since it had been "abandoned" by Wyatt. Using any semantics, nevertheless, the fact is that Mellon forcibly ousted the Plaintiff-Debtor of possession of the property.

Wyatt testified that she called Mellon on that same day, but no one would talk to her.

At trial, Wyatt submitted various bills which she claims were necessary to restore the house to a habitable condition so that it could be rented. These bills included: $10.00 to have the water meter reinstalled, $29.54 to repair the air conditioners, $38.16 to change the locks, and $83.43 to repair the water heater. As additional damages, Wyatt claims 13 hours of lost work for consultation with her attorney and attending the trial, at $4.50/hour. She testified that she suffers from chronic hypertension, was embarrassed in the neighborhood, lost potential tenants and still suffers humiliation, mental anguish and other ill effects. She requests the above damages plus costs and expenses to prosecute the action, including attorney fees.

As stated above, Mellon claims in mitigation that, "[T]he property preservation performed by Mellon was in accordance with the applicable H.U.D. regulations which have the effect of law.... Thus, Mellon did not take possession of the property in the sense contemplated by Section 362. It merely acted to preserve the property as it was required to do. Section 362(a)(3) pertains to only taking possession of the property while Mellon activities dealt with vacancy and preservation...."

## DISCUSSION

I am satisfied that Mellon's actions were in direct violation of the automatic stay provisions of § 362. Changing the locks and otherwise interfering with Wyatt's possession constituted an act to obtain possession of the property, making Mellon liable for damages caused by its violation of the stay.

It is common knowledge that rental property sometimes temporarily stands vacant, while waiting for tenants to move in, especially in the Dayton market. Surely, if Mellon inspected regularly, its agents had observed that the house was occupied during prior inspections. The June 21 inspection must have been the first time that they

saw it empty, after many months of occupancy. For them immediately to assume an abandonment without first contacting either Wyatt or the realtor is reckless, especially considering the "For Rent" sign and the admittedly well-kept nature of the lawn and house. Furthermore, a prospective tenant was then on the premises. The prudent course of action before entering would, of course, have been to contact Wyatt, especially since she lived so close by.

Further, Mellon maintains that its agents entered to "winterize" the premises. "Winterizing the house" in June is a strange choice of words, and it is doubtful whether normal "winterizing" practices include tampering with air conditioners.

Mellon's representative stated, "Had the debtor contacted Mellon, the new keys would have been made available to them [sic]." Wyatt's testimony was that she did indeed contact Mellon on the same day, but no one would speak with her.

Mellon cites *In re Harbin,* 25 BR 703 (Bkrtcy., W.D.Tenn.1982) for the proposition that where there is no showing of conscious and intentional violation of the automatic stay, no damages can be awarded. However, the *Harbin* court seemed to rely on the fact that no damages were suffered. It stated, at 706:

> The Court cannot discover any actual damages in this case from Brooks' action which actually amounted to a disregard or a misinterpretation of the bankruptcy laws. Moreover, the Court cannot find that the action taken by Brooks was a conscious and intentional violation of the bankruptcy laws of such a magnitude that would merit an award of damages to the debtor.

It is axiomatic that no damages will be awarded where none has been suffered (except, of course, punitive damages). The present case is readily distinguishable, in that actual damages are present and proven.

Mellon further asserts that its actions were mandated by the HUD regulations found in *Administration of Insured Home Mortgages* # 4330.1, ¶ 112 at p. 58. This section reads:

> INSPECTION AND PRESERVATION OF PROPERTIES. Properties securing mortgages that are delinquent or in default impose added servicing responsibilities. (See 24CFR 203.377.)
>
> a. Delinquencies and defaults occurring in single-family mortgages where the mortgagor's equity is minimal, should be scrutinized closely for the possibility of abandonment. When a property is left unattended or uncared for, a rapid depreciation of the security can occur and vandalism generally follows. When a mortgage is in default and a payment is not received within 45 days of the due date, and efforts to reach the mortgagor have been unsuccessful, the mortgagee shall make a visual inspection of the property to determine whether vacancy or abandonment exists. In all cases of vacancy or abandonment the mortgagee shall take reasonable action to preserve the security property.

While the regulation requires "reasonable action to preserve the security property," it is clear in first requiring "efforts to reach the mortgagor." Such efforts were not made here. Only after these efforts, according to the regulation (and just plain common sense), should there be a visual inspection to "determine whether vacancy or abandonment exists." Mellon's agents did not comply with either of these qualifications in the regulation. Further, even though the regulation is reasonable under some circumstances, it does not supersede the mandates of § 362.

Assuming applicability of H.U.D. regulations, specifically the servicing requirements and pressure placed on an approved mortgagee in order to remain in "good standing", we have previously held that such regulations neither invite nor constitute mitigation of violations of the automatic stay provisions of 11 U.S.C. § 362. *In the Matter of Estridge,* Case No. 3–81–02228, unreported (at Dayton, Ohio, January 20, 1983).

Even if they had so complied, to assume abandonment from the facts, as stated previously, is ill-founded. Moreover, the agents' acts in tampering with the air conditioner and the water heater, which caused damage, were not reasonable to preserve the property.

Lastly, Mellon seems to argue that it should be given the benefit of the doubt by stating that it "has an unblemished record of complying with the provisions of the Automatic Stay in thousands of cases throughout the country." There is no evidence to this fact, although the court does recognize that counsel in this case for Mellon appears regularly in this court in relief of stay litigation and personally demonstrates deference to the provisions of § 362 of the Bankruptcy Code and the rights of mortgagors in possession.

In any event, Wyatt was unable to get into her house and, even when she was able to get in, she first had to make repairs to place it in good condition to show it to prospective tenants. Obviously, Mellon's actions hindered Wyatt's attempts to rent the property. Surely, she suffered, as she testified, some anguish in having to deal with this, especially when Mellon would not speak with her on June 21.

IT IS HEREBY ORDERED that punitive damages be not assessed but that Mellon pay to Wyatt $161.16 to cover her expenses and actual damages of $350.00, which includes her disruption in possession of the premises, loss of wages, and personal embarrassment and humiliation in the neighborhood, plus attorney's fees to be fixed after an evidentiary hearing unless the parties can stipulate the value thereof.