In the Matter of Gerald A. BEHM
a/k/a Jerry Behm and Shirley A.
Behm d/b/a Behm Trucking, Debtors.

Bankruptcy No. MM7–84–00624.

United States Bankruptcy Court,
W.D. Wisconsin.

Nov. 30, 1984.

**812**

Joel Bruce Winnig, Joel Bruce Winnig S.C., Madison, Wis., for debtors.

Dan R. McNamara, Montello, Wis., Albert J. McGinnis, Madison, Wis., for creditor Tom Talbot.

## DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

This matter comes on the motion of the debtor seeking to have a creditor found to be in contempt for violating the 11 U.S.C. § 362 stay. The creditor both denies the violation of the stay and contends that his lack of written notice of the stay precludes a finding of contempt.

Gerald A. Behm conducted his business of trucking and hauling as Behm Trucking out of his residence in Fort Atkinson, Wisconsin. Behm leased, with an option to purchase, a 1978 Kenworth Tractor ("the truck") from Tom Talbot, Inc. of Montello, Wisconsin which is owned and managed by Tom Talbot. The lease was executed on December 6, 1982 and modified, effective January 2, 1984. On April 2, 1984 Behm filed for bankruptcy relief under chapter 7. He continued to operate his business, but did not make payments in accordance with the lease for the month of May 1984. On May 31, 1984, Talbot repossessed the truck from Jefferson Transport, to whom Behm had entrusted it under a management agreement.

There is confusion as to whether Talbot had notice of Behm's bankruptcy, but it is clear that Behm did not schedule Talbot as a creditor and Talbot received no written notice from the bankruptcy court. Behm testified that he told Talbot about the bankruptcy on May 7, 1984, the day after the section 341 creditors' meeting. Behm also testified that shortly prior to April 2, 1984, he had informed Talbot that he intended to file bankruptcy. Talbot, however, testified that he knew of Behm's bankruptcy only through rumors until he spoke with Behm's attorney following the repossession and was informed of the bankruptcy. After being informed of the bankruptcy by Behm's attorney Talbot sold the truck.

■ There is no doubt that Talbot violated the automatic stay when he repossessed the truck. Section 362 states that the filing of a bankruptcy petition "operates as a stay, applicable to all entities of (3) ... any act to obtain possession of property of the estate or of property from the estate." Section 541 states that the commencement of a bankruptcy case creates an estate comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." Certainly the truck was property of the estate against which Talbot acted to obtain possession.

■ Even though the automatic stay was violated, the violation alone is not enough to hold the violator in contempt. The party guilty of contemptuous conduct must be shown to have had notice or knowledge sufficient to be aware of the proscribed conduct. *In Re Endres*, 12 B.R. 404 (Bankr.E.D.Wis.1981); *In Re Marcott*, 30 B.R. 633 (Bankr.W.D.Wis.1983); *In Re Hailey*, 621 F.2d 169 (5th Cir.1980); *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir.1976); *Yates v. United States*, 316 F.2d 718 (10th Cir. 1963). However, "a person is in contempt of court if he knowingly violates a court order, whether or not he received a formal notice. The cases do not require that the contemnors have received formal notice if they have actual knowledge of the order."

*Fidelity Mortgage Investors,* 550 F.2d at 52.

■ The statutory proscription of 11 U.S.C. § 362 has to be similarly treated. If a creditor's conduct violates the automatic stay, lack of notice of the debtor's bankruptcy is not a defense. The conduct may be avoided and the debtor's reasonable expenses arising from the violation reimbursed. *Wyatt v. Mellon Mortg., Inc.,—East,* 36 B.R. 783 (Bankr.S.D.Ohio 1984); *In Re Zartun,* 30 B.R. 543, 10 B.C.D. 909 (B.A.P. 9th Cir.1983); *In Re Gorin,* 18 B.R. 151 (Bankr.D.Conn.1982); *In Re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1980). However, in determining whether to impose sanctions, the court must determine whether the creditor acted innocently or with knowing or reckless disregard for the authority of the court. *In Re Van Riper,* 25 B.R. 972 (Bankr.W.D.Wis.1982); *In Re Wilkerson,* 22 B.R. 728 (Bankr.E.D.Wis. 1982). Thus, the question presently before the court is whether Talbot was sufficiently informed of Behm's bankruptcy to find his violation to be knowing and willful.

■ In the present case there is much confusion as to whether Behm informed Talbot that he was intending to file for bankruptcy or just threatened to do so. But that distinction need not be made. Even if Behm did not inform Talbot of his imminent bankruptcy, Talbot continued to violate the automatic stay after being called and informed by the debtor's attorney post-filing. Talbot repossessed Behm's truck on June 1, 1984. Shortly thereafter, and prior to the resale of the truck, Talbot talked with Behm's counsel who informed him of Behm's bankruptcy. Talbot's continuing with repossession and sale is a separate violation of the stay and, because it was done knowingly, is a contempt upon which damages may be awarded.

A similar situation existed in *In Re Miller,* 22 B.R. 479 (D.Md.1982) when the creditor bank which had repossessed the debtor's automobile without knowledge of the debtor's chapter 7 filing learned of the bankruptcy later that day from the debtor's attorney who called to request a return of the car. The court held that the continued possession of the auto by the bank was a continuing violation of the automatic stay sufficient to hold the bank in contempt. *Miller* is an affirmation of an earlier bankruptcy court decision, *In Re Miller,* 10 B.R. 778 (Bankr.D.Md.1981), in which the bankruptcy court stated that the repossession of the auto, even though in violation of the automatic stay, was not a contemptuous act by the bank because it did not have actual notice or knowledge of the debtor's bankruptcy, however,

> It is implied in § 362 that a creditor is under an obligation to maintain the status quo as of the moment of the filing of the petition and to take whatever affirmative action necessary to do so. An action taken in violation of the stay is void *ab initio* whether it is taken with knowledge of the stay or without. [Citations omitted.] A creditor who has taken such an action is therefore under an obligation to reverse it and to restore the status quo. The retention of an improved position gained by the creditor in violation of the stay is itself a continuing violation of the stay, and done knowingly, is grounds for contempt.

10 B.R. at 780.

■ Damages may be awarded in civil contempt to coerce compliance with the court's order or to compensate the plaintiffs for their actual losses, as well as costs of bringing the action and attorney's fees, or both. *In Re DePoy,* 29 B.R. 471 (Bankr. N.D.Ind.1983); *In Re Reed,* 11 B.R. 258 (Bankr.D.Utah 1981); *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1946); *In Re Thayer,* 24 B.R. 491 (Bankr.W.D.Wis.1982); *In Re Bailey,* 20 B.R. 906 (Bankr.W.D.Wis. 1982). Damages and attorney's fees may be awarded ancillary to a contempt order so long as the awards are not punitive but rather restore the status that existed before the violation of the stay. *In Re Zartun,* 30 B.R. 543 (B.A.P. 9th Cir.1983).

■ The truck lease is a commercial transaction. The right of Talbot to repos-

sess the truck is controlled, if the lease is a true lease by the terms of the lease or common law, and if the lease is a financing lease, by the Uniform Commercial Code as enacted in Wisconsin Statute Ch. 409. In either case the lease and WIS.STAT. § 409.503 provide for Talbot's right to take possession after default. In the absence of any claim that Talbot lacked that right, a sale was completed and no equitable basis for this court to exercise its power to void the sale in this instance has been shown. Thus, Behm's only assessable damages would arise from loss of the use of the truck and costs and attorney's fees for bringing this action.

In this case the truck became property of the estate under 11 U.S.C. 541 upon Behm's filing for bankruptcy. Under § 541(A)(6) money received for use of the property of the estate belongs to the estate. The only relevant exception is for earnings from services performed by an individual debtor after the commencement of the case. When Behm filed for bankruptcy his truck was under a management agreement with Jefferson Transport. The management agreement covered only the use of the truck and did not cover any services performed by the debtor. The proceeds under the agreement were to be paid to Talbot and applied against Behm's debt. Therefore, although the debtor's estate may have been deprived of income because of the repossession and sale of the truck the individual debtor was not. Since Behm did not lose income from the repossession and sale, he had no actual damages arising from the contempt. Therefore, on this motion of the debtor, and recognizing the abandonment of the truck by the trustee's filing of a "no-asset report" which states

> trustee of the estate of the above-named debtor(s), reports that he/she has neither received nor paid any money on account of this estate; that he/she has made diligent inquiry regarding all property belonging to the estate; and that there are no assets in the estate which: (1) are not either inconsequential in value or burdensome to the estate, or (2) would be reasonable to administer and have value

over and above the exemptions claimed by the debtor(s) and to which the undersigned makes no objection,

on June 4, 1984, the debtor's recovery on this motion must be limited to costs and attorney's fees.

Judgment may be entered accordingly. Costs and attorney's fees may be proved by filing a verified bill of costs on appropriate notice.