**In re Kelli Sheree HOLMAN, Debtor.**

**Bankruptcy No. 2–87–05065.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Oct. 28, 1988.

Laurence B. Landon, Columbus, Ohio, for debtor.

W. Jeffrey Moore, Columbus, Ohio, for Richard Cash/Cash Cars.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

## AMENDED OPINION AND ORDER ON MOTION FOR SANCTIONS

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Motion for Sanctions ("Motion") filed by Kelli S. Holman, the debtor in this Chapter

7 case. Debtor's Motion seeks an order of this Court citing Cash Cars in contempt for allegedly violating the automatic stay imposed by 11 U.S.C. § 362(a). Debtor requests that the Court award her compensatory and punitive damages as well as attorney's fees.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court is empowered to hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(A), (E) and (G). *See, Budget Service Company v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir.1986). The following Opinion and Order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

## II. *Factual Findings*

1. On November 12, 1987, debtor filed a voluntary petition with this Court under Chapter 7 of the Bankruptcy Code. As of the petition date, debtor was employed by the Sears Distribution Center in Columbus, Ohio, on a full-time basis. In addition, debtor worked part-time for Cash Cars. Prior to filing her bankruptcy petition, debtor had purchased a 1984 Chevrolet Cavalier (the "Automobile") from Cash Cars. Cash Cars also financed the purchase of the Automobile.

2. After Holman failed to make a series of regularly scheduled payments pursuant to the financing arrangement between debtor and Cash Cars, the Automobile was repossessed by Cash Cars on April 5, 1988.

3. Cash Cars was not listed as a creditor in the schedules which the debtor filed along with her bankruptcy petition. Thus, at the time the Automobile was repossessed, Cash Cars did not have notice or actual knowledge of the filing of debtor's bankruptcy case.

4. On April 7, 1988, Lawrence B. Landon, counsel for the debtor, telephoned Richard Cash, the owner of Cash Cars, to advise him that Holman had filed a Chapter 7 bankruptcy proceeding. Landon also advised Cash that he would be amending the bankruptcy schedules filed with the Court to add Cash Cars as a creditor. On April 8, 1988, Landon filed an amendment to debtor's bankruptcy schedules listing Cash Cars as a creditor and the Automobile as an asset of the bankruptcy estate. On April 13, 1988, Cash Cars received written notice of the pendency of the bankruptcy case from the Clerk of this Court.

5. On April 14, 1988, Holman contacted Cash by telephone to request the return of the Automobile. At that time, Cash refused to discuss the matter with Holman and referred her to his attorney, W. Jeffrey Moore.

6. On April 14, 1988, the Motion was filed.

7. On April 21, 1988, Christopher Watkins, an attorney who is associated with Moore, attended the first meeting of creditors in this case on behalf of Cash Cars. Watkins testified that he had been instructed by Cash to attend the first meeting of creditors in order to attempt to negotiate a resolution of this matter which would result in withdrawal of debtor's Motion. At the first meeting, Landon and Watkins agreed to attempt to negotiate a reaffirmation agreement between debtor and Cash Cars which would permit Holman to retain the Automobile. According to Landon, at the first meeting he "reiterated the fact that he [Cash] should return the vehicle to Ms. Holman because any further continuance of willful retention of that vehicle would be even a further violation of the stay and would incur [sic] any further damages." Hearing Transcript ("Transcript") at 35. Landon further testified as follows: "I was told by the attorney [Mr. Watkins] that they were willing to work it out but that they did not want to release the vehicle at that time." Landon also indicated that, at the creditors' meeting, he presented Watkins with a copy of an unreported bankruptcy decision from this district—*i.e., In re O'Reilly*, No. 2-86-04922 (Bankr.S.D. Ohio May 27, 1987).[1] Watkins was advised

---

1. The Court notes that the *O'Reilly* "decision" referred to by the parties was actually a one-page order drafted by Robert H. Farber, Jr., Landon's co-counsel in the present case, and

by Landon that the *O'Reilly* decision established the proposition that continued retention of lawfully repossessed collateral after knowledge of the filing of the bankruptcy proceeding is obtained constitutes a willful violation of the automatic stay which would give rise to a finding of sanctionable contempt.

8. Sometime after the first meeting of creditors, Landon forwarded a proposed reaffirmation agreement to Cash Cars. Cash Cars refused to execute the reaffirmation agreement due to the presence of a clause therein which provided for payment by Cash Cars of $250 to Holman for "wrongful repossession" of the Automobile as well as for the attorney's fees which she incurred in prosecuting the present Motion. Transcript at 39.

9. Throughout the negotiations with Watkins regarding the reaffirmation agreement, Landon repeatedly advised Watkins that the vehicle should be returned to Ms. Holman immediately. Landon stated as follows: "[e]ach and every time I spoke with Mr. Watkins I reiterated the point that the car should be returned to Ms. Holman...." Transcript at 42.

10. Cash claimed that no formal demand was made for return of the vehicle, stating as follows: "At the hearing I told Mr. Landon that no time have I refused to give the car back or not refuse [sic] to give the car back. No one ever made a demand, no one ever came out and made a demand. The only time a demand was made was on the 7th of April on the telephone so I had no knowledge of that gentleman [Landon]". Transcript at 56. Cash conceded that he held the car pending resolution of the negotiations pertaining to the reaffirmation agreement. Transcript at 56. He further stated his objection to payment of "wrongful repossession" fees as well as attorney's fees incurred in connection with prosecution of the present Motion as a condition of the reaffirmation agreement.

11. On May 5, 1988, Kelli Holman appeared at Cash Cars' business premises and demanded return of the Automobile. At such time, Cash Cars returned the Automobile to her.

12. Holman was without the use of the Automobile for 29 days between the time it was repossessed and subsequently returned to her. Holman testified that, in her opinion, the Automobile's fair rental value was $15 per day. As a result of her loss of use of the Automobile, Holman missed three days of work at the Sears Distribution Center. In addition, debtor was required to pay approximately six dollars ($6) to a co-worker for transportation to and from work on one occasion. Holman suffered various other inconveniences such as her inability to keep an appointment with her child's pediatrician due to lack of transportation.

### III. *Conclusions of Law*

Section 362 of the Bankruptcy Code generally provides for the automatic stay of any and all proceedings against the debtor once a bankruptcy petition is filed. The automatic stay's importance is echoed in the legislative history of § 362, which provides in pertinent part that:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 54–55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787 at 5840 and 6296–97. The consequences of violating the automatic stay provisions of

---

signed by Judge Sellers. The *O'Reilly* order merely memorialized Judge Sellers' oral ruling from the bench in the contempt proceeding that came before the Court in that case. Thus, *O'Reilly* has no precedential value herein. Nevertheless, as discussed *infra*, the *O'Reilly*

holding—that a creditor's continued retention of lawfully repossessed collateral after receipt of notice or actual knowledge of a bankruptcy proceeding constitutes a willful violation of the automatic stay—is supported by a host of reported decisions.

§ 362 are set forth in § 362(h), which provides that:

> "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

*See, Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988).

 Actions by creditors to collect a debt from the debtor, which are taken after the filing of a bankruptcy petition, are void *ab initio* and of no legal effect. *See, e.g., Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982); *In re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1980). Such actions are invalid even though the creditor had no notice of the bankruptcy filing. *In re Miller,* 10 B.R. 778 (Bankr.D.Md.1981), *aff'd.,* 22 B.R. 479 (D.Md.1982); *In re Stephen W. Grosse, P.C.,* 68 B.R. 847 (Bankr.E.D.Pa. 1987). Lack of notice on the part of the creditor of the bankruptcy case means only that his action was not willful and, therefore, not contemptuous. *See, Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Matter of Endres,* 12 B.R. 404 (Bankr.E.D.Wis.1981).

The debtor concedes that Cash Cars did not have notice or actual knowledge of the bankruptcy at the time it repossessed the Automobile. However, Cash Cars' continued retention of the Automobile after it received notice of Holman's bankruptcy, debtor argues, constitutes a continuing violation of the automatic stay sufficient to hold Cash Cars in contempt. Cash Cars raises a number of arguments in response to the debtor's assertions. As the discussion below demonstrates, none of the rejoinders made by Cash Cars convince the Court that sanctions should not be imposed.

 Cash Cars argues that its conduct has been reasonable, that it has not willfully violated the automatic stay and that sanctions should not be imposed against it.

According to Cash Cars, it should not have been required to act upon Landon's telephonic notice of Holman's bankruptcy which it received on April 7, 1988. A number of courts have held oral notice to be a sufficient means of apprising a creditor of the pendency of a bankruptcy action. *See, e.g., In re Wariner,* 16 B.R. 216, 218 (Bankr.N.D.Tex.1981); *In re Newman,* 53 B.R. 7, 8 (Bankr.M.D.Tenn.1985); *In re Davis,* 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987); *In re Locasico,* 77 B.R. 932, 933 (Bankr.S.D.Fla.1987). Under the circumstances presented herein—*i.e.,* the failure of debtor to list Cash Cars as a creditor at the outset of her case—it was reasonable for Cash Cars to request written notification of debtor's bankruptcy. It is undisputed that Cash Cars was notified in writing of the pendency of debtor's bankruptcy case by the Clerk of this Court on April 13, 1988. The cases are legion which hold that a creditor who retains lawfully repossessed collateral after receiving notice or actual knowledge of the pendency of a bankruptcy case has engaged in conduct that is contemptuous. *Miller,* 10 B.R. at 780, *aff'd.,* 22 B.R. 479 (D.Md.1982); *Endres,* 12 B.R. at 406; *Wariner,* 16 B.R. at 218 (Bankr.N.D.Tex.1981); *In re Johnson,* 18 B.R. 755, 757 (Bankr.S.D.Ohio 1982); *Matter of Behm,* 44 B.R. 811, 813 (Bankr.W.D. Wis.1984); *Matter of Clark,* 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986); *Grosse,* 68 B.R. at 856. Hence, from the point that it received notice of Holman's bankruptcy case—April 13, 1988—Cash Cars' continued retention of the Automobile constituted a willful violation of the automatic stay.

Cash Cars contends that the delay occasioned in returning the Automobile resulted from consultation with its attorney in order to determine its legal rights and obligations. According to Cash Cars, such consultation was eminently reasonable and should not give rise to sanctionable contempt. This assertion is not compelling. In view of the fact that Cash Cars received oral notification of the pendency of Holman's bankruptcy on April 7, 1988, it clearly had ample time to explore its legal rights and obligations before the time it received

official notification of debtor's bankruptcy filing on April 13, 1988. Furthermore, despite Cash Cars' protestations to the contrary, the time during which the Automobile was unlawfully retained far exceeded that reasonably necessary for Cash Cars to explore its legal rights and duties.

Cash Cars also argues that, because the debtor made no formal demand for return of the Automobile until May 5, 1988, sanctions against it should not be imposed. This argument, being unsupported in fact or law, is also unavailing. The uncontraverted testimony of Landon establishes that he requested return of the vehicle to both Watkins and Cash at the first meeting of creditors. Transcript at 35. He subsequently repeated this request to Watkins on several occasions. *Id.* Hence, the testimony of Landon does not support Cash Cars' assertion that only a single demand for return of the Automobile —on May 5, 1988—was made. In any event, a creditor that has repossessed collateral without knowledge of a bankruptcy petition has an affirmative duty to restore the *status quo*, which in this case would entail return of the Automobile, without the debtor having to seek relief from the bankruptcy court. *See, Miller,* 10 B.R. at 780, *aff'd.* 22 B.R. at 481 (D.Md.1982); *Endres,* 12 B.R. at 406 (holding that "refusal to return the property upon learning of the proceeding is a willful violation of the stay provisions and may be contemptible"); *Wariner,* 16 B.R. at 218 ("creditor has an affirmative duty to return the property and restore the status quo once it learns its actions violated the stay"); *Behm,* 44 B.R. at 813; *Clark,* 60 B.R. at 14 ("creditor who violates the automatic stay has an affirmative duty to return the property and restore the status quo once it learns its actions violate the stay"); *Grosse,* 68 B.R. at 850 ("creditor should undo its postpetition collection activities without the debtor having to seek affirmative relief from bankruptcy court"); *Contra, In re Abt,* 2 B.R. 323 (Bankr.E.D.Pa.1980). The rationale which underpins this sound rule of law was aptly summarized by the district court in its affirmance of the bankruptcy judge's imposition of sanctions in *Miller* [10 B.R. 778]:

The courts have been quick to realize that creditor inaction can often be as disruptive to the debtor as affirmative collection efforts. *E.g., In re Elder,* 12 B.R. 491, 494 (Bkrtcy.M.D.Ga.1981) ("No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay.") In recognition of this problem, creditors have been required, when necessary, to take affirmative steps to restore the status quo at the time of the filing of the petition for relief. *See In re Norton,* 15 B.R. 627 (Bkrtcy.E.D.Pa. 1981) (retention of tax refund by I.R.S. held contemptuous); *In re Howren,* 10 B.R. 303 (Bkrtcy.D.Kan.1981) (withholding by university of debtor's transcript violated automatic stay); *In re Eisenberg,* 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980) (refusal by city to withdraw tax lien from tax lien sale contemptuous). To place the onus on the debtor, as the Bank would have the Court do, to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory.

22 B.R. at 481. Thus, Cash Cars' contention that it had no obligation to return the Automobile until the debtor made an actual demand therefor flies in the face of the authorities outlined above.

The remaining arguments advanced by Cash Cars are equally uncompelling. Cash Cars suggests that it had the right to retain the Automobile while it attempted to negotiate a reaffirmation agreement with Holman's counsel. As the case law discussed above indicates, a creditor must act *immediately* to restore the *status quo* once it learns that it has violated the automatic stay. To suggest that a creditor may retain collateral in violation of the automatic stay during the course of the reaffirmation negotiation process is ludicrous. Cash Cars also makes much of the fact that Holman's vehicle was uninsured (a fact which was not proven at hearing). According to Cash Cars, it could rightfully

retain possession of the Automobile until it was furnished with proof of insurance. A like contention was rejected by the *Miller* court and its observations are again apposite here:

It does not follow from the fact that the Bankruptcy Court may condition a debtor's right to possession of his automobile upon his obtaining adequate insurance for that vehicle that private parties are free to unilaterally do the same. Section 362 contains provisions by which a creditor, upon proper application to the Bankruptcy Court, may obtain relief from the automatic stay. A creditor who employs self-help instead does so at its own risk.

22 B.R. at 482. Finally, Cash Cars suggests that Holman's "bad faith" in failing to list Cash Cars as a creditor in the schedules accompanying her petition should preclude the imposition of sanctions against Cash Cars. This argument is flawed. First, there is no evidence of record indicating that Holman's failure to list Cash Cars as a creditor in the schedules which she filed was anything more than an honest mistake on her part. No evidence establishing bad faith has been offered. Nevertheless, even if the Court were convinced that Holman acted in bad faith, this would not excuse Cash Cars' contemptuous conduct.

Section 362(h) of the Bankruptcy Code provides that an individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. Having found that Cash Cars has willfully violated the automatic stay, the debtor is entitled to recovery of provable compensatory damages pursuant to § 362(h). Here, the Court finds that a $15 per day rental value for lost use of debtor's Automobile is reasonable. While Holman lost the use of the Automobile for a total of 29 days, for the first seven days that she was without use of the Automobile, Cash Cars had no notice of the pendency of this bankruptcy proceeding. Hence, of the 29 days during which Holman did not have access to the Automobile, 22 days of lost use of the Automobile are attributable to Cash Cars' contemptuous conduct. Accordingly, the Court awards the debtor $330 in damages for lost use of her Automobile and an additional six dollars ($6) as compensation for transportation costs paid by Holman to a co-worker. The Court further awards Holman $450 in attorney fees, such amount having been established by the testimony of Landon. Finally, although Holman testified that she lost three days of employment due to lack of transportation, no evidence was presented establishing Holman's rate of pay or the amount of lost wages which she suffered during this time period. Accordingly, the Court finds that Holman suffered a total of $786 in damages as a result of Cash Cars' willful violation of the automatic stay. Hence, Cash Cars is hereby ordered to pay the Debtor $786 in damages for its willful violation of the automatic stay imposed by 11 U.S.C. § 362(a). Finally, the Court notes that the imposition of punitive or exemplary damages would not be appropriate based upon the facts adduced at hearing.

Based upon the foregoing, debtor's Motion for Sanctions is hereby GRANTED. Cash Cars is hereby ordered to pay damages to the debtor in the amount of $786.

IT IS SO ORDERED.