In re **HURON ELECTRIC CO., INC.,** Debtor.

**HURON ELECTRIC CO., INC.,** Plaintiff,

v.

**GRAYBAR ELECTRIC CO., INC.,** et al., Defendants.

Bankruptcy No. 94–3214.

Related No. 94–32258.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

March 16, 1995.

L. Mari Taoka, Toledo, OH, for plaintiff.

Lynn M. Rowe, Cleveland, OH, for defendants.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Plaintiff's Motion to Show Cause

and for Sanctions on Defendant Philips Display, Plaintiff's Statement of Time and Expenses, and the Response of Defendant Philips Display. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court Orders that Defendant Philips Display shall pay to the Debtor Three Hundred Eighty-six Dollars ($386.00), representing the attorneys fees and costs associated with the pursuit of Plaintiff's accounts receivable from Defendant.

### FACTS

On September 12, 1994, the Plaintiff filed for Bankruptcy relief under Chapter 11 of the Bankruptcy Code, listing an accounts receivable in the amount of Twenty-seven Thousand Nine Hundred Thirteen Dollars and 75/100 ($27,913.75) owed from Defendant Philips Display (hereafter "Phillips"). At the same time, Plaintiff owed Defendant Graybar Electric Company, Inc. (hereafter "Graybar") approximately Thirteen Thousand Dollars ($13,000.00) relating to the Phillips account. According to the Plaintiff's Complaint, Graybar issued a "Notice of Commencement" to Phillips subsequent to the filing of Plaintiff's bankruptcy petition. Such a notice initiates proceedings that have the effect of placing a mechanic's lien or security interest in the funds owed to Graybar by Plaintiff. In its answer, Graybar denies this allegation, but admits that it did serve a "Notice of Furnishing" upon Philips subsequent to the bankruptcy petition.

Also subsequent to the filing for bankruptcy protection, Plaintiff made numerous attempts to collect payment of its account receivable from Philips. On November 17, 1994, frustrated by Philips' indifference to Plaintiff's collection attempts, Plaintiff initiated the present adversarial proceeding. Plaintiff alleges that Philips violated the automatic stay provisions of the Bankruptcy Code by refusing to tender payment of the debt due and payable to Plaintiff. This Court, being aware of Plaintiff's tenuous cash flow situation regarding its use of cash collateral, ordered an Emergency Pre–Trial be held on December 9, 1994. Notice was received by Philips on November 29, 1994, and by Graybar on December 2, 1994. Neither Defendant responded to the Court Order by appearance or any other notification to the Court or to Plaintiff.

On December 15, 1994, the Court issued an Order directing Philips to remit to Plaintiff the amount prayed for in its complaint. Philips still failed to respond, and on December 23, 1994, Plaintiff filed a Motion to Show Cause why the Philips should not be held in Contempt for failure to obey the Order of this Court. A Hearing on the Motion was scheduled for January 9, 1995.

On January 3, 1995, Philips made payment to Plaintiff according to the Court Order. At the Hearing on January 9, 1995, the Court ordered the Plaintiff to file a statement of costs and fees associated with the pursuit of its Philips Display accounts receivable. Such a statement was received, and lists Two Hundred and Sixty-six Dollars ($266.00) in attorneys fees, and One Hundred Twenty ($120.00) in costs. Philips has filed a response, claiming that it should not be required to pay the fees and costs associated with the initiation of the adversarial proceeding because Philips' actions were not the result of any bad faith or alleged contempt. Rather, Philips contends, these costs were the fault of Graybar's attempts to attach funds due the Plaintiff. Philips does admit that due to inefficiency and delay of processing payment during the holiday season, it is responsible for the Plaintiff costs associated with Plaintiff's efforts to assure compliance with the Court's Order. Thus, Phillips argues that it should only bear costs of the Plaintiff's attorney fees to the extent of Ninety-five Dollars ($95.00).

### LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 362. Automatic Stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

## DISCUSSION

■ Matters concerning the automatic stay are core proceedings pursuant to 28 U.S.C. Section 157. Thus, this case is a core proceeding:

■ Section 362(h) of the Bankruptcy Code provides that when a creditor willfully violates the automatic stay, the injured party may recover actual damages, including costs and attorney fees. Actions taken in violation of the stay imposed under § 362 are invalid and voidable and shall be avoided absent limited equitable circumstances. *Easley v. Pettibone Michigan Corporation,* 990 F.2d 905 (6th Cir.1993). The protection of the stay is unavailable only when the debtor unreasonably withholds notice of the stay, prejudicing the debtor's ability to raise the stay as a defense; or when the debtor attempts to use the stay unfairly as a shield to avoid an unfavorable result. *Id.* at 911. A Bankruptcy Court's decision regarding the amount of damages is a factual finding and will not be disturbed unless the finding is clearly erroneous. *Archer v. Macomb County Bank,* 853 F.2d 497 (6th Cir.1988).

Phillips does not argue in this case that its failure to turnover assets to the Plaintiff/Debtor were not in violation of the automatic stay. Rather, it argues that it should not be required to compensate the Plaintiff for attorneys fees and costs because it did not act in "bad faith". Philips does not cite, and the Court is not aware, of any case-law requiring a showing of a creditor's bad faith as a prerequisite to a Court award of attorneys fees under § 362(h). Section 362(h) does require, however, a showing that the violation was "willful".

*In re Holman,* 92 B.R. 764 (Bankr. S.D.Ohio 1988) is a case illustrative of the "willful" requirement of § 362(h). In *Holman,* a secured creditor repossessed the debtor's automobile after the debtor had filed bankruptcy, but before receiving notice of the bankruptcy. The Court held that once the creditor received notification of the bankruptcy, it was unreasonable for the creditor not to return the property. *Id.* at 768. Further, the Court noted that oral notice can be a sufficient means of apprising a creditor of the pendency of a bankruptcy action. *Id.* Thus, the delay after the creditor received notice or actual knowledge of the bankruptcy and failed to return the property constituted a willful violation of the stay, and was contemptuous. *Id.* The Court noted that the six days between the time that the creditor received oral notification and written notification of the bankruptcy far exceeded the time reasonably necessary for the creditor to explore its legal rights and remedies. *Id.* at 769. Thus, the debtor was entitled to the award of compensatory damages. *Id.* at 770.

In the case at bar, Philips does not dispute the Plaintiff's allegation that Plaintiff issued Philips a statement showing a balance due it on August 15, 1994. Nor does Philips dispute the fact that it received oral notification or actual notice of Plaintiff's bankruptcy shortly after Plaintiff filed for bankruptcy protection. Notwithstanding such notice, Philips refused to remit the balance due, or even to reply to Plaintiff's attorney. Indeed, Phillips did not remit payment of its debt to Plaintiff until January 3, 1995, despite Plaintiff's repeated attempts to convey the urgency and necessity of the timely receipt of the funds it was due.

This Court finds that rather than take the minimal action necessary to examine the propriety of Plaintiff's claims and remit payment, Philips chose to ignore the Bankruptcy proceedings while the Plaintiff's business was teetering on the brink of insolvency, liquidation, and the unemployment of all of its employees. Thus, this Court holds, as did the Court in *Holman,* that Philips unlawfully retained property of the Debtor far in excess of the time reasonably necessary for it to

explore the legal rights and remedies involved.

Nor does the Court feel that any actions taken by Graybar justify the inaction taken by Philips. Even if the allegations made by Philips concerning Graybar are true, and there has been no evidence offered to support this allegation, this does not justify Philips' failure to respond to the requests made by Plaintiff. A simple inquiry to this Court, its own counsel, or Plaintiff's counsel would have revealed the undisputed nature of the automatic stay of all actions against property of the Plaintiff/Debtor's estate. Instead, Phillips chose to ignore the bankruptcy action pending in this Court, and should therefore pay the costs associated with their choice.

Section 330(a)(1) of the Bankruptcy Code permits an attorney to recover reimbursement for actual, necessary expenses and reasonable compensation for actual, necessary services rendered based on the nature, the extent, and the value of such services and the time spent on such services. *In re Beair,* 168 B.R. 633, 637–38 (Bankr.N.D.Ohio 1994). The Court finds the costs and attorney fees assessed in this case extremely reasonable in both the hourly rate charged and the time spent. The Court is also aware that § 362(h) allows the Court to award punitive damages in appropriate circumstances. Because the Plaintiff has not asked for punitive damages in this case, the Court will not grant them. However, the Court will note that had punitive damages been sought, it may have considered them in this case in light of the possible ramifications of Philips' unreasonable delay.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

***ORDERED*** that Philips Display remit to the Plaintiff/Debtor the sum of Three Hundred Eighty-six Dollars ($386.00) represent-

ing Plaintiff's attorney fees and costs associated with this adversarial proceeding.